UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **NASSAU MARITIME HOLDINGS DESIGNATED ACTIVITY COMPANY**<br><br>**VERSUS**<br><br>**RIVERSIDE NAVIGATION, LTD., AFRA RIVERSIDE, LLC, GLORY RIVERSIDE NAVIGATION LTD., ACTIVE DENIZCILIK VE GEMI ISLETMECILIGI A.S., AND ACTIVE SHIPPING & MANAGEMENT PTE LTD.** | **CIVIL ACTION**<br><br>**NO.**<br><br>**JUDGE**<br><br>**MAGISTRATE** |

**VERIFIED COMPLAINT, PRAYER FOR PROCESS
AND RELIEF BY MARITIME ATTACHMENT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Nassau Maritime Holdings Designated Activity Company ("Nassau Maritime") and for its Verified Complaint against Defendants Riverside Navigation Ltd. ("Riverside"), Afra Riverside, LLC ("Afra Riverside"), Glory Riverside Navigation Ltd. ("Glory Riverside"), Active Denizcilik ve Gemi A.S., and Active Shipping & Management Pte. Ltd. ("Active Shipping"), (collectively, "Defendants"), *in personam*, allege on information and belief as follows:

JURISDICTION

1.

This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court pursuant to 28 U.S.C. §1333 and within the meaning of Rule 9(h) and Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure in an action for failure

1

to perform under the terms and conditions of a shipping finance agreement and breach of Foreign Preferred Ship Mortgage.

2.

Venue is proper in this matter pursuant to 33 U.S.C. §1391(b)(2), as Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims; however, on information and belief, an asset of Defendants is now or soon will be within this District, to-wit the M/T RIVERSIDE (IMO 9412464).

3.

This Honorable Court has previously issued a Rule B non-resident attachment against the M/T RIVERSIDE in Civil Action No. 3:20-cv-00588, under the same circumstances and alter ego and related allegations presently pleaded in Plaintiff's Verified Complaint, and security of over $3 million was posted by defendants.

IDENTITY OF PARTIES

4.

At all material times, Plaintiff Nassau Maritime is and was a legal entity organized and existing under and by virtue of the laws of a foreign country.

5.

At all material times, Defendant Riverside is and was a foreign legal entity, with a registered address of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands, MH96960.

6.

At all material times, Defendant Afra Riverside is and was a foreign legal entity, with a registered address of Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands, MH96960.

7.

At all material times, Defendant Glory Riverside is and was a foreign legal entity, with its registered office at (Care of Active Denizcilik ve Gemi Isletmeciligi AS), Dudullu Organize Sanyi Bolgesi, 2. Cadde 5, Esensehir Mah, Umraniye, 34776 Istanbul, Turkey.

8.

At all material times, Defendant Active Shipping is and was a foreign legal entity, with its principal place of business in Istanbul, Turkey, at Dudullu Organize Sanyi Bolgesi, 2. Cadde 5 Esensehir Mah, Umraniye, 34776 Istanbul, Turkey. Active has also a listed address at 43-1, Hong Leong Building, 16, Raffles Quay, Singapore 048581, which is actually the address of Thome Ship Management Pte Ltd., the technical ship managers for a number of vessels in Active Shipping's fleet.

9.

Defendants are non-residents that cannot be found in this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and are without a valid agent for service of process in this district; however; on information and belief, defendants have property, goods, chattels, or credits and effects that are now found within the jurisdiction of this Honorable Court and subject to non-resident attachment, to-wit: the M/T RIVERSIDE (IMO No. 9412464), an oceangoing motor tanker vessel, engaged in navigation and maritime commerce. At all relevant times, the M/T RIVERSIDE was under the registered ownership of

3

Riverside, Afra Riverside, Glory Riverside, and/or some other corporate entity, all of which are alter egos of Active Shipping and/or Mr. Mehmet Ali Umur and/or persons acting with or under the control of Mr. Mehmet Ali Umur.

## PLAINTIFF'S CLAIM

10.

Pursuant to a Loan Agreement dated 15 May 2008 (the "Loan Agreement") between HSH Nordbank AG ("HSH Nordbank", operating subsequently as Hamburg Commercial Bank AG as described below) and Fair Seas Navigation Ltd., Nordic Bay Navigation Ltd., Pacific Sky Navigation Ltd., Lambert Navigation Ltd., Northville Navigation Ltd., Providence Navigation Ltd., and Spencer Navigation Ltd. (collectively, "Borrowers"), HSH Nordbank made available to Borrowers a secured loan facility in the amount of $418,441,800.00 (the "Loan") to be divided into four tranches.

11.

A copy of the original Loan Agreement and the two addenda thereto are attached *in globo* as Exhibit 1.

12.

As security for their joint and several obligations under the Loan Agreement, the Borrowers made certain covenants in First Preferred Marshall Islands Mortgages entered into between HSH Nordbank and the Borrowers. A sample copy of one of the mortgages, on the M/V PACIFIC SKY, dated 6 March 2009 (the "First Preferred Mortgage"), is attached as Exhibit 2.

4

PD.29780619.1

13.

In April 2019, HSH Nordbank began trading under the name Hamburg Commercial Bank AG. *See* United Kingdom Financial Services Register at https://register.fca.org.uk/ShPo_FirmDetailsPage?id=001b000000MfSqlAAF (last visited on 14 September 2020). A printout of the relevant portion of the Financial Services Register entry is attached for ease of reference as Exhibit 3.

14.

On 21 June 2019, Hamburg Commercial Bank AG assigned the First Preferred Mortgage to Promontoria Maritime Holding Designated Activity Company ("Promontoria Maritime"). The Assignment of First Preferred Mortgage is attached as Exhibit 4.

15.

Also on 21 June 2019, Hamburg Commercial Bank AG assigned all rights and obligations of Hamburg Commercial Bank AG arising from the Loan Agreement to Promontoria Maritime. That Loan Assignment Agreement is attached as Exhibit 5.

16.

A Certificate of Incorporation on Change of Name dated 9 January 2020 and showing that Promontoria Maritime has changed its name to Nassau Maritime Holdings Designated Activity Company is attached as Exhibit 6.

17.

Plaintiff Nassau Maritime is therefore entitled to proceed as Mortgagee under the Loan Agreements and First Preferred Mortgages in question.

18.

As detailed in the First Preferred Mortgages and as security for, *inter alia*, the Borrowers' obligations under the Loan Agreement, the Borrowers registered with the Marshall Islands Registry the Mortgagee's security interest over the vessels in question. A copy of the registration certificate of the First Preferred Mortgage for the M/V PACIFIC SKY is attached as Exhibit 7.

19.

The material terms of the Loan Agreements and First Preferred Mortgage include the following:

- Borrowers have undertaken jointly and severally under the Loan Agreement to make repayment of the Loan in multiple tranches, *see* Loan Agreement at Sections 2, 3, and 6 and at Schedule 1; First Preferred Mortgage at Article 1 paragraph 1;

- All costs and expenses incurred by the Mortgagee in the enforcement of the Loan Agreement and/or the First Preferred Mortgage shall be borne by Borrowers, *see* Loan Agreement at Section 29.1;

- Failure to make any payment when due under the Loan Agreement shall constitute an Event of Default, *see* Loan Agreement at Sections 20.1 and 20.2;

- In the event of an Event of Default, the Mortgagee has the right to, among other things, foreclose the First Preferred Mortgage and bring legal action for recovery of the Loan, *see* First Preferred Mortgage at Article II paragraph 1(b)(ii), (iii);

- On the occurrence of an Event of Default described under the Loan Agreement and the First Preferred Mortgage, default interest shall continue to accrue on

overdue sums until payment is made by Borrowers, *see* Loan Agreement at Section 8.4;

20.

In breach of the Loan Agreement and First Preferred Mortgage, Borrowers failed to make payment of Tranche 3.B when due under the Loan Agreement on 5 March 2019. This failure constitutes an Event of Default of the Loan Agreement.

21.

Also, in breach of the Loan Agreement, Borrowers have failed to provide information relating to certain earnings as requested by the Lender in accordance with clause 18.2.7 of the Loan Agreement, and have failed to ensure that certain earnings be paid into the relevant Earnings Account in accordance with clause 19.1 of the Loan Agreement. These failures constitute further Events of Default under the Loan Agreement.

22.

On 12 March 2019, 10 April 2019, 13 September 2019, 14 October 2019, 9 March 2020, and 12 March 2020, Plaintiff and its predecessors in interest sent notices of default and reservations of rights to Borrowers. Copies of these notices of default and reservations of rights are attached *in globo* as Exhibit 8.

23.

As a result of the aforementioned Events of Default under the Loan Agreement, the Borrowers have also breached the terms of the relevant ship mortgages, which are foreign preferred ship mortgages in accordance with 46 U.S.C. § 31301(6)(B).

24.

As of 5 March 2020, the amounts due under the Loan Agreement were $119,366,178.14 in principal and $4,867,472.32 in interest, plus applicable default interest and costs and expenses of enforcement.

25.

Despite demand, Borrowers have failed to remedy the Events of Default.

26.

Plaintiff Nassau Maritime's claims arising from the Loan Agreement and the First Preferred (ship) Mortgages are maritime claims within the meaning of Federal Rule of Civil Procedure 9(h) and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

27.

Accordingly, Defendants' asset the M/T RIVERSIDE may be attached and seized as security for Plaintiff's maritime claim.

28.

All conditions precedent have been or will be performed.

## CORPORATE IDENTITY OF DEFENDANTS: SINGLE BUSINESS ENTERPRISE THEORY AND ALTER EGO DOCTRINE

29.

Nassau Maritime repeats and realleges as if fully set forth herein *in extenso* the allegations set forth in Paragraphs 1-28 above.

8

30.

Defendant Active Shipping has a fleet of five (5) tankers consisting of the M/T FAIR SEAS, the M/T NORDIC THUNDER, the M/T PACIFIC SKY, the M/T RIVERSIDE, and the M/T SOUTHPORT. It also has a fleet of four (4) bulk carriers, consisting of the M/V CAPE LAMBERT, the M/V CAPE NORTHVILLE, the M/V CAPE PROVIDENCE, and the M/V CAPE SPENCER. *See* Defendant, Active Shipping's website https://www.activeshipping.com.sg (Last visited on September 15, 2020).

31.

Each of these vessels that belong to Defendant Active Shipping's fleet are nominally owned by different entities. For example, upon information and belief, the M/T RIVERSIDE's registered owners have been Riverside, Glory Riverside, Afra Riverside, and/or some other unknown corporate entity.

32.

Upon information and belief, these entities share officers, directors, and personnel with Defendants.

33.

Upon information and belief, these entities regularly intermingle funds and interchangeably pay each other's debts.

34.

Upon information and belief, these single purpose legal entities are alter egos of one another and of Defendants.

9

35.

Upon information and belief, Mr. Mehmet Ali Umur is chairman and owner of Active Shipping, and owner of Umur Group, a large conglomerate with numerous investments.

36.

Upon information and belief, Mr. Mehmet Ali Umur is the common officer of these seven (7) single-purpose legal entities, including Riverside, Afra Riverside, and Glory Riverside, exercises complete domination and control over these entities and/or disregards the other entities' corporate form, and/or conducts the business and operations of these entities as if the same were Mr. Mehmet Ali Umur's own, and vice versa; therefore, adherence to the fiction of the separate existence of the entities as distinct from one another would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

37.

Notably, the Loan Agreement identifies the single purpose legal entities as Borrowers that were jointly and severally liable for the loan obligations arising under same. *See* Loan Agreement, Exhibit 1, page 1.

38.

Each of these single-purpose legal entities identified and appointed Mr. Mehmet Ali Umur as the attorney-in-fact to execute the Loan Agreement on behalf of each Borrower. *See* Loan Agreement, Exhibit 1, pp. 48-49.

39.

Mr. Mehmet Ali Umur was listed as the Guarantor in the Loan Agreement and agreed to guarantee all financial liabilities of the Borrowers arising under same. Notably, the address listed for Mr. Mehmet Ali Umur was his "place of business," which is the address for Active Shipping

in Istanbul. *See* Loan Agreement, Exhibit 1, p. 12.

40.

Significantly, all notices or communications as to the Borrowers were to be addressed to Active Shipping and sent to the same address for Defendant Active Shipping and Mr. Mehmet Ali Umur according to Section 30.1 of the Loan Agreement and as further evidenced by the attached copies of notices of default and reservations of rights that were sent by Plaintiff to the Borrowers. *See*, Loan Agreement, Exhibit 1, p. 47 and Exhibit 8.

41.

Based on the aforementioned, it is clear that the Borrowing entities under the Loan Agreement are effectively controlled by Mr. Mehmet Ali Umur and that the unity of ownership and interest between the Borrowers, Defendant Active Shipping and Mr. Mehmet Ali Umur is such, that in reality, no separation exists.

42.

Upon information and belief, the initial registered owner of the M/T RIVERSIDE was Defendant Riverside. The vessel was then nominally transferred briefly to Defendant Afra Riverside, only to be eventually transferred to the entity that appears to be its current owner, Defendant Glory Riverside; this is further evidence of the fact that all these companies are alter egos to one another and their only purpose is to isolate further the assets that they purportedly own from their true owners, i.e. Defendant Active Shipping and/or Mr. Mehmet Ali Umur.

43.

Accordingly, the separate corporate identities of Defendants Riverside, Afra Riverside, Glory Riverside, and Defendant Active Shipping should be disregarded and treated as alter-egos

of one another and of Mr. Mehmet Ali Umur, and/or any transfers should be ignored as fraudulent conveyances.

44.

Plaintiff reserves the right to amend and/or supplement its pleadings as necessary and/or as the facts become more fully known, and reserves the right to compel immediate discovery of information bearing on the identity of the entities and the alter ego allegations made herein.

45.

In the alternative, Defendant Active Shipping and the Borrowers' single-purpose vessel owning entities—including Riverside, Glory Riverside and Afra Riverside—are, and have at all times relevant hereto, been operating as a single business enterprise; therefore, the separate identities of Riverside, Glory Riverside, Afra Riverside and/or any other related entity should be disregarded and Defendant Active Shipping should be held liable to Plaintiff for the breach of Loan Agreement and the First Preferred Mortgage by the Borrowers.

46.

On information and belief, the premises of this Verified Complaint are true and correct, and within the Admiralty and Maritime jurisdiction of the United States of America and this Honorable Court.

WHEREFORE, PREMISES CONSIDERED, Nassau Maritime Holdings Designated Activity Company, respectfully requests:

A. Process in due form of law, according to the rules of practices of this Honorable Court in cases of admiralty and maritime jurisdiction issue against Defendants, Riverside Navigation, Ltd, Afra Riverside, LLC, Glory Riverside Navigation Ltd., Active Denizcilik Ve Gemi A.S., Active Shipping & Management Pte. Ltd., and Afra

Riverside LLC, there be judgment against Defendants *in personam* in the amount then due under the Loan Agreement and the First Preferred Mortgage, plus interest, together with charges, costs, and expense of enforcement, and any and all other amounts required to be paid under the Loan Agreement.

B. That the M/T RIVERSIDE (IMO. 9412464) and all other property of Defendants within this District be attached and/or garnished pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime claims for writ of attachment or garnishment in the amount of at least $124,233,650.46 ($119,366,178.14 in principal and $4,867,472.32 in interest) plus interest, costs and attorneys' fees, all pursuant to writ of attachment and/or garnishment as authorized or permitted by the Federal Rules of Civil Procedure and the laws and statutes of the State of Louisiana;

C. That after due proceedings be had, that any and all goods and chattels of Defendants in the hands of third parties be retained within this jurisdiction pending the outcome of this litigation (or pending the issuance of proper and solvent security by Defendants); and

D. That plaintiff have such other and further relief as law and justice and equity may allow.

                Respectfully submitted,

                **PHELPS DUNBAR LLP**

                BY:  */s/ Kevin J. LaVie*

Kevin J. LaVie (#14125)
Email: kevin.lavie@phelps.com
Magdalini Galitou (#38473)
Email: magdalini.galitou@phelps.com
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
-and-
Marc G. Matthews (admission pro hac vice to be requested)
Texas Bar No. 24055921
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Facsimile: (713) 626-1388
**ATTORNEYS FOR PLAINTIFF**
**NASSAU MARITIME HOLDINGS**
**DESIGNATED ACTIVITY COMPANY**

14

## VERIFICATION

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

**KEVIN J. LAVIE**

who, upon being duly sworn, did depose and say:

That he is a member of the firm of Phelps Dunbar LLP, attorneys for plaintiff; that he has read the foregoing Complaint, and the facts contained therein are true and correct to the best of his knowledge, information, and belief, and that the source of this information is communications received from the plaintiff and their agents; that he has been authorized by the plaintiff to execute this verification on plaintiff's behalf; and that he makes this verification as attorney because no officer of plaintiff is located at the place of the Court.

_____
KEVIN J. LAVIE

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 15th DAY

OF SEPTEMBER 2020.

_____
NOTARY PUBLIC

MAGDALINI GALITOU
Notary Public
Notary ID No. 160183
Orleans Parish, Louisiana

15

PD.29780619.1