UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **NASSAU MARITIME HOLDINGS DESIGNATED ACTIVITY COMPANY** | **CIVIL ACTION NO. 20-614** |
| **VERSUS** | **JUDGE JACKSON** |
| **RIVERSIDE NAVIGATION, LTD., AFRA RIVERSIDE, LLC, GLORY RIVERSIDE NAVIGATION LTD., ACTIVE DENIZCILIK VE GEMI ISLETMICHLIGI A.S., AND ACTIVE SHIPPING & MANAGEMENT PTE LTD.** | **MAGISTRATE JUDGE JOHNSON** |

## POST-HEARING MEMORANDUM OF LAW

This Court ordered that the parties may file post hearing memoranda limited to the issue of admiralty subject matter jurisdiction (Dkt. 30). Glory Riverside Navigation, Ltd. ("Glory Riverside" or "Defendant") respectfully submits that this Court lacks admiralty jurisdiction and should vacate the attachment of the Vessel and dismiss the complaints.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A full recitation of facts is set forth in Defendant's memorandum of law in support of its motion to vacate and its reply memorandum, which are fully incorporated herein. For the sake of clarity, Defendant recites certain facts relevant to subject matter jurisdiction below.

On September 15, 2020, Plaintiff Nassau Maritime Holdings Designated Activity Company ("Plaintiff" or "Nassau Maritime") filed its Complaint in this action seeking attachment of the Vessel M/T RIVERSIDE in order to secure its claim for amounts allegedly due under a Loan Agreement totaling $119,366,178.14 in principal and $4,867,472.32 in interest. Dkt. 1 ¶ 24. Plaintiff filed an Amended Complaint on October 14, 2020. Dkt. 20. In the Amended Complaint, Plaintiff alleges "an action for failure to perform under the terms and conditions of a shipping

finance agreement and breach of Foreign Preferred Ship Mortgage." Dkt. 20 ¶ 1. Plaintiff further alleges that the Court has jurisdiction for the "default of any term of the preferred mortgage" pursuant to 46 U.S.C. § 31325(b)(2)(A). *Id.* ¶¶ 2, 31. Plaintiff goes on to detail its security interest in a First Preferred Mortgage of the vessel M/V PACIFIC SKY, as security for the Borrower's obligations under the Loan Agreement. *Id.* ¶ 23.

In its prayer for relief, Plaintiff seeks judgment *in personam* on the merits "in the amount due under the Loan Agreement and the First Preferred Mortgage," and also seeks security for those claims through the attachment of the Vessel. Dkt. 20 at 19-20. Notably, no party to the Loan Agreement is named in this action. Notwithstanding the allegations of the Amended Complaint, Plaintiff stated on the record in the hearing on the Motion to Vacate that this is an action to foreclose on the First Preferred Mortgage of M/V PACIFIC SKY, a vessel which is not subject to the *in rem* jurisdiction of this Court.[1] Only Mr. Umur, the guarantor of the Loan Agreement, and his alleged alter egos have been named in this action. As further set forth below, this action for breach of the Loan Agreement, and/or to enforce the Loan Guarantee against Mr. Umur's purported alter ego entities, is not a maritime claim.[2] An action for breach of a loan agreement or guarantee of loan payments does not support subject matter jurisdiction as neither claim constitutes a maritime claim as required by Supplemental Admiralty Rule B. Additionally, an *in personam* claim against the guarantor of the indebtedness secured by the First Preferred Mortgage is only subject to this Court's admiralty jurisdiction in a proper, *in rem* action to foreclose upon a mortgage. As there is no vessel before this Court which is the subject of a Preferred Mortgage, this is not and cannot be a foreclosure action under the Ship Mortgage Act.

---

[1] At the November 4 hearing Plaintiff further acknowledged that the vessel M/T RIVERSIDE is not subject to any mortgage held by Nassau Maritime, and the registered owner, defendant Glory Riverside, is not a borrower under the Loan Agreement.

[2] As noted by this Court, those claims are subject to German law and German jurisdiction. Dkt. 20-1 at 45.

**ARGUMENT**

I. **The Ship Mortgage Act Does not Provide an *in Personam* Cause of Action in Admiralty for Plaintiff's Claim on the Loan Agreement or Guarantee Where There is no *in rem* Foreclosure of a Mortgaged Vessel**

The contract at the base of this matter is the 15 May 2008 Loan Agreement between Plaintiff and the various borrowing entities. The Loan Agreement's stated purpose is to provide funds to fulfill another contract – a shipbuilding contract to build certain vessels. Dkt. 20-1 at 1-3. It is well-settled that a contract to build a vessel is not a maritime contract, *Hyundai Heavy Indus. Co. v. M/V Saibos FDS*, 163 F. Supp. 2d 1307, 1309 (S.D. Ala. 2001), and a contract to finance the building of vessels (the Loan Agreement) is not a maritime contract. *La. Int'l Marine, LLC v. Drilling Rig Atlas Century*, 2012 U.S. Dist. LEXIS 40781, Slip op. at 14 n.2 (S.D. Tex. Mar. 9, 2012). Nor is a guarantee for payment under the Loan Agreement a maritime contract. *E.g., Kreatsoulas v. Freight of Levant Pride & Levant Fortune*, 838 F.Supp. 147, 149-151 (S.D.N.Y. 1993) (holding that because the payment of money is not a maritime obligation, guaranty of a loan is not a maritime contract) (surveying precedent); *See also Seattle-First Nat. Bank v. F/V RALU KAI*, No. 82-235, 0083 WL 808139 (D. Alaska Apr. 20, 1983) (guarantee for payment of a note is not a maritime contract).

A vessel mortgage, like any mortgage, is an "accessory contract" – that is, the mortgage does not exist on its own, but is instead a separate contract that serves as security for the enforcement of an obligation contained in a "principal contract." Here, the principal obligation is the Loan Agreement of 15 May 2008, a non-maritime contract. Vessel mortgages (not on the M/T RIVERSIDE) were required to be created by that loan agreement when the vessels were delivered, and thus these vessel mortgages became accessory contracts securing the loan agreement along with other security devices also stated in the loan agreement.

3

Prior to the passage by the United States Congress in 1920 of the Ship Mortgage Act, there was no jurisdiction in admiralty by reason of a mortgage on a vessel. *Governor & Co. of the Bank of Scot. v. Sabay*, 211 F.3d 261, 270 (5th Cir.), *cert. denied*, 531 U.S. 959 (2000). Admiralty jurisdiction resting on the subsequent extension of jurisdiction by Section 31325 requires that the action be founded upon and assert a claim under the mortgage itself. In *The Thomas Barlum*, 293 U.S. 21 (1934), the vessel owner challenged the foreclosure by a federal court in admiralty of vessel mortgages made pursuant to the initial 1920 Ship Mortgage Act on grounds that the underlying contract secured by the mortgages was not, in itself, a maritime contract cognizable within admiralty jurisdiction. The Supreme Court recognized that there indeed was no admiralty jurisdiction over the underlying contract claim. However, the Court recognized that the Congress has authority, under Article III of the United States Constitution, to extend the admiralty jurisdiction of the United States Courts to actions against the mortgaged vessel. 293 U.S. at 46-47. But the Court made clear that this extension applies only to actions on a mortgage that is made and exists strictly within the terms of the law passed by Congress. *Id.* Nothing in the opinion purports to make the underlying obligation or contract secured by the mortgage transpose into an obligation or contract within the admiralty jurisdiction. As to the Constitutional authority of Congress to enact the Ship Mortgage Act and the limitations thereon, the Court added that "the Congress necessarily acts within a sphere restricted by the concept of the admiralty and maritime jurisdiction." 293 U.S. at 44. Thus, the Ship Mortgage Act, including current section 31325, creates a ***limited*** grant of admiralty jurisdiction where none existed before to allow the enforcement of mortgages strictly made and existing within its sphere. The right of action encompassed in section 31325 includes an *in personam* claim, but it must be founded upon enforcement of the mortgage contract over the mortgaged vessel. If one were to accept plaintiffs' reading of 31325,

4

all contracts would become maritime contracts in and of themselves if secured by a preferred ship mortgage.  Congress did not intend to make every principal obligation secured by, among other things, a vessel mortgage, magically transpose itself into a maritime contract.

That the Loan Agreement is secured by various preferred mortgages over vessels which are not before the Court does not create admiralty jurisdiction here.  The Ship Mortgage Act allows a mortgagee to bring a cause of action *in rem* for the foreclosure of a preferred ship's mortgage and gives federal district courts exclusive jurisdiction to hear that cause of action under 46 U.S.C. § 31325 *et seq.*[3]  Specifically, the Ship Mortgage Act defines a "preferred mortgage" as "a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel."  46 U.S.C. § 31325(a).  Because Plaintiff does not assert a maritime lien *in rem* against any vessel here, its statement on the record that it seeks to foreclose upon a mortgage is misstated.  Plaintiff's allegations, taken as true, establish that Mr. Umur, the only party in this action relevant to the transaction, guaranteed the indebtedness of the Loan Agreement, a non-maritime contract, not the mortgages securing the Loan Agreement.

As previously set forth in Defendant's memoranda (Dkt. 18 at 10-11; Dkt. 22 at 2-7), while suits to foreclose on a preferred vessel mortgage (U.S. or foreign), including an *in personam* claim against the owner or guarantor for the indebtedness secured by the mortgage, are maritime claims within the Court's admiralty jurisdiction, here, the suit is not against a "mortgagor, maker, comaker, or guarantor" to foreclose on the mortgages or to recover any deficiency following a foreclosure, but to recover on indebtedness where no vessels subject to the mortgages have been seized *in rem*.  The Ship Mortgage Act was substantially amended in 1988.  While certain *in rem*

---

[3] Historically a vessel mortgage did not give rise to a maritime lien and thus did not confer a maritime claim.  The Ship Mortgage Act statutorily created a lien and maritime claim but only against the mortgaged vessel. *The Thomas Barlum*, 293 U.S. 21 (1934); *Governor & Co. of the Bank of Scot. v. Sabay*, 211 F.3d 261, 270 (5th Cir.), *cert. denied*, 531 U.S. 959 (2000).

and *in personam* claims were already permissible under the earlier version of the Act (46 U.S.C. § 954), the legislative history to the Act, reflected at H.R. Rep. 100-918 (1988), describes the intention to add Section 31325(b) in order to allow **nonadmiralty** *in personam* actions in state court against the mortgagor, maker, comaker, or guarantor when the mortgaged vessel is not present within the District. By contrast, if the vessel were present, and subject to an *in rem* claim, the related *in personam* claim could also be brought in admiralty to recover any deficiency judgment. Specifically, the legislative history states:

> This [31325(b)] subsection makes a substantive change to law by allowing a nonadmiralty civil action to be brought against the mortgagor, comaker, or guarantor for the amount of the outstanding indebtedness secured by the vessel or any deficiency in paying off that indebtedness. This change allows an action to be brought even when the vessel is outside U.S. jurisdiction.

H.R. Rep. 100-918, 100th Cong., 2nd Sess., 1988. at *44. Section 31326 confirms that while the federal courts have exclusive jurisdiction over *in rem* claims to foreclose on a preferred mortgage, the state and federal courts have concurrent jurisdiction over *in personam* claims under 31325(b).

Based on the foregoing, Plaintiff's argument that it can sue "on the outstanding indebtedness secured by the mortgaged vessel" under Section 31325(b)(2)) without actually foreclosing on the mortgaged vessel *in rem* fails. This is consistent with the cases previously cited by both parties' memoranda (Dkts. 18, 21, 22), where every instance of an *in personam* claim against a guarantor in admiralty under the Ship Mortgage Act also involved an *in rem* claim upon which that admiralty jurisdiction was based. *E.g., Ray Capital Inc. v. M/V Newlead Castellano*, No. CV 416-093, 2016 WL 4154459, at *2 (S.D. Ga. Aug. 4, 2016); and, *WesBanco Bank, Inc. v. M/V JENNY LYNNE*, No. 4:18-CV-184, 2020 WL 2306902, at *4 (S.D. Ind. May 8, 2020).

It is clear from the case law allowing claims against guarantors in admiralty that, as expressed in the legislative history, such claims are permitted solely to allow a foreclosing claimant

to recover any deficiency remaining on the mortgage following foreclosure and sale of the mortgaged vessel, if any. *Citytrust v. Yacht Restoration*, No. 90-7814, 1991 WL 90752 (S.D.N.Y. May 17, 1991) ("the Federal Ship Mortgage Act 46 U.S.C. § 31325(b)(2)(A) permits an action for a deficiency judgment against a guarantor… This section, 46 U.S.C. § 31325, provides that upon default under a ship mortgage, the mortgage may bring an *in rem* admiralty action against the vessel, and then bring a subsequent action *in personam* in admiralty against the guarantor to recover any deficiency remaining after sale of the vessel"); *Bank of the West v. Sailing Yacht Serendipity*, 101 F. Supp. 3d 238, 248 (E.D.N.Y. 2015) ("unlike in an *in rem* action, if the proceeds of the sale of the vessel do not satisfy the judgment, the owner [or guarantor] remains liable for the balance of the amount") (citing cases); *Comerica Bank v. Stewart*, No. 09-13421, 2009 WL 4646894 (E.D. Mich. Dec. 8, 3009) (holding that the action sounds in admiralty where plaintiff initially sought possession of the mortgaged vessel *in rem*); *cf. First Bank Puerto Rico v. Swift Access Marketing, Inc*., 697 F. Supp. 2d 259, 261 (D.P.R. 2010) (because Plaintiff sought to enforce a promissory note and related guarantees, not foreclosure *in rem* upon a mortgaged vessel, the claim was "devoid of federal law issues"… "Congress did not intend that all actions involving mortgages on vessels be resolved in federal court…"); *Cape Ann Commercial Fisheries Loan Fund, Inc. v. Schlichte*, 1993 A.M.C. 2835 (Mass. App. Div. 1993) (holding that where "plaintiff's action is not an *in rem* proceeding to foreclose upon the preferred ship's [sic] mortgage, or to recover a judgment for a deficiency after the sale of the mortgage collateral," plaintiff's *in personam* action to recover the balance due on a promissory note, even where the note was secured by a preferred ship's mortgage, was properly before the state court).

  The absence of a single case in which admiralty jurisdiction was found in an action brought *in personam* for a breach of a Loan Agreement without concurrent foreclosure on the mortgage

based on the presence of *in rem* defendant vessel or personal jurisdiction of a mortgagor is telling. This is not a foreclosure action – either *in rem* against a mortgaged vessel, or *in personam* against the guarantor Mr. Umur (or his alleged alter egos) to recover on a deficiency following foreclosure *in rem*. This is the precise situation contemplated by the legislative history of the Ship Mortgage Act, which allows a nonadmiralty claim to be asserted against a guarantor where the mortgaged vessel is not within the United States. There is simply no precedent for the maritime attachment of an entirely separate vessel over which Plaintiff has no mortgage, pursuant to the Ship Mortgage Act, on the basis of an *in personam* claim for breach of either the Loan Agreement or the Loan Agreement guarantee.

## **CONCLUSION**

The attachment should be vacated and this Court should dismiss Nassau Maritime's Complaints with prejudice for lack of subject matter jurisdiction.

Dated: November 12, 2020

> */S/ Patrick H. Patrick*
> Patrick H. Patrick, T.A. (14297)
> PATRICK MILLER LLC
> 400 Poydras Street, Suite 1680
> New Orleans, Louisiana 70130
> Telephone: (504) 527-5400
> Facsimile: (504) 527-5456
> E-mail: ppatrick@patrickmillerlaw.com
> *Counsel for Glory Riverside Navigation, Ltd.*
>
> Of Counsel:
> James H. Power, Esq. *(pro hac vice)*
> HOLLAND & KNIGHT LLP
> 31 West 52nd Street
> New York, NY 10019
> Telephone: (212) 513-3200
> Facsimile: (212) 513-9010
> E-mail: james.power@hklaw.com