UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| NASSAU MARITIME HOLDINGS DESIGNATED ACTIVITY COMPANY | CIVIL ACTION |
| VERSUS | |
| RIVERSIDE NAVIGATION, LTD., ET AL. | NO. 20-00614-BAJ-SDJ |

## RULING AND ORDER

Before the Court is Defendant Glory Riverside Navigation, Ltd.'s **Motion To Vacate The Rule B Attachment And To Dismiss The Verified Complaint (Doc. 18)**. Plaintiff opposes Defendant's Motion. (Doc. 21). Defendant filed Reply Memoranda in Further Support of its Motion. (Doc. 22; Doc. 27). On November 4, 2020, this matter came before the Court for oral argument. (Doc. 30). The Court permitted the parties to file post-hearing briefs, which both parties filed. (Doc. 31–Doc. 32).

For the reasons stated herein, Defendant's Motion (Doc. 18) is **GRANTED.**

**I.     BACKGROUND**

**A. Procedural History**

On September 15, 2020, Plaintiff filed a Verified Complaint, Prayer For Process and Relief By Maritime Attachment. (Doc. 1). Plaintiff subsequently amended its Complaint. (Doc. 20). Plaintiff alleges *in personam* causes of action against the following Defendants: Glory Riverside Navigation Ltd.,

1

Mehmet Ali Umur, Riverside Navigation Ltd., Afra Riverside, LLC, Active Denizcilik ve Gemi Isletmeciligi A.S., and Active Shipping & Management Pte. Ltd.[1] (*Id.*).

Plaintiff also filed a Motion for Writ of Attachment Pursuant to Rule B seeking an Order directing the U.S. Marshals Service to seize the M/T RIVERSIDE to recover amounts allegedly owed. (Doc. 3). The Court issued an Order for Writ of Attachment Pursuant to Rule B. (Doc. 6). On September 16, 2020, the U.S. Marshals Service executed the Seizure Warrant on the M/T RIVERSIDE. (Doc. 10). Defendant and movant Glory Riverside Navigation, Ltd.—the registered owner of the M/T RIVERSIDE—now seeks to vacate the attachment of the M/T RIVERSIDE and to dismiss Plaintiff's Verified Complaints for lack of subject matter jurisdiction. (Doc. 18).

**B. Alleged Facts**

For present purposes, the following allegations are accepted as true:

This dispute arises out of an alleged breach of a Loan Agreement and ship mortgages, which Plaintiff asserts are preferred ship mortgages pursuant to 46 U.S.C. § 31301(6)(B). (Doc. 20, ¶¶ 15, 28). Plaintiff is the mortgagee by assignment. (*Id.* at ¶¶ 20–22; *see* Doc. 20-5). Defendant Umur is the guarantor of the Loan Agreement.[2] (Doc. 20, ¶ 43).

---

[1] The named Defendant entities are not parties to the Loan Agreement. Glory Riverside Navigation Ltd., Riverside Navigation Ltd. and Afra Riverside, LLC allegedly owned the M/T RIVERSIDE at different times. (Doc. 20, ¶¶ 36, 62). Plaintiff alleges that the Umur family owns and manages "Active," an entity the Umur family uses to "control and dominate the Borrowers and Defendant Glory Riverside." (*Id.* at ¶ 35).

[2] Borrowers under the Loan Agreement are not Defendants in this case. (Doc. 20, ¶ 15).

2

Critically, Movant Glory Riverside is not a party to the Loan Agreement. (Doc. 18-1, p. 2). Equally important, the ship mortgages at issue do *not* encumber the M/T RIVERSIDE, the *only* vessel subject to the Court's writ of attachment.[3] (Doc. 20-5, p. 11; *see* Doc. 20-2; *see also* Doc. 20, ¶ 23).

Plaintiff asserts that Umur is the alter ego of multiple entities including Glory Riverside.[4] (Doc. 20, ¶ 68; Doc. 31, p. 5). Through its alter ego theory, Plaintiff contends that Umur is the owner in fact of the M/T RIVERSIDE. (Doc. 31, p. 3). On this basis, Plaintiff sought and obtained attachment of the M/T RIVERSIDE to recover amounts owed for breaches of the ship mortgages encumbering other vessels. (Doc. 20, ¶ 71; Doc. 3; Doc. 6).

Defendant now seeks dismissal of Plaintiff's Verified Complaints and vacatur of the attachment of the M/T RIVERSIDE for lack of subject matter jurisdiction. (Doc. 18; Doc. 32, p. 8). Defendant asserts that the Ship Mortgage Act does not provide jurisdiction for the maritime attachment of a vessel over which Plaintiff has no mortgage based on Plaintiff's *in personam* claim for breach of the Loan Agreement or ship mortgages. (Doc. 32, p. 8).

---

[3] The record reflects that Plaintiff allegedly possesses mortgages on the following five vessels: (1) CAPE LAMBERT; (2) CAPE NORTHVILLE; (3) PACIFIC SKY; (4) CAPE PROVIDENCE; and (5) CAPE SPENCER. (Doc. 20-5, p. 11).

[4] Plaintiff asserts that the Court should disregard the corporate forms of Defendants Glory Riverside Navigation Ltd., Riverside Navigation Ltd., and Afra Riverside, LLC, because the Umur family members exercise complete domination and control over these entities. (Doc. 20, ¶ 36).

3

## II.  LEGAL STANDARD

Supplemental Rules B and E of the Federal Rules of Civil Procedure govern attachment of assets in a maritime action. *Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 915 (S.D. Tex. 2013). Plaintiff bears the burden to establish a right to attachment. *Id.* To meet its burden, Plaintiff must show the following: (1) a valid *prima facie* admiralty claim against Defendant; (2) Defendant cannot be found within the district; (3) Defendant's property is within the district; and (4) there is no legal bar to attachment—either statutory or maritime in nature. *Id.*; *see also Austral Asia Pte. Ltd. v. SE Shipping Lines Pte. Ltd.*, No. CIV.A. 12-1600, 2012 WL 2567149, at *1 (E.D. La. July 2, 2012). The first inquiry is the primary issue in this case. The parties dispute whether Plaintiff has met its burden of showing that the Court has admiralty jurisdiction. *See Icon Amazing, L.L.C.*, 951 F. Supp. 2d at 915.

Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f). *Austral Asia Pte. Ltd.*, No. CIV.A. 12-1600, 2012 WL 2567149, at *1 (citing *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2nd Cir. 2008), *cert. denied*, 555 U.S. 1102 (2009)); *see also* Fed. R. Civ. P. Supp. Adm. Rule E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."). A "district court may certainly vacate the [attachment] if it determines, after hearing from both parties,

4

that the requirements of Rule B have not actually been met." *Austral Asia Pte. Ltd.*, No. CIV.A. 12-1600, 2012 WL 2567149, at *1 (citing *Williamson*, 542 F.3d at 52); *see also Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, No. CIV.A. V-11-2, 2011 WL 888951, at *2 (S.D. Tex. Mar. 10, 2011). The hearing is not intended to definitively resolve the dispute between the parties; rather, the Court must make a preliminary determination whether reasonable grounds exist for the arrest. *A. Coker & Co. v. Nat'l Shipping Agency Corp.*, No. CIV. A. 99-1440, 1999 WL 311941, at *1 (E.D. La. May 17, 1999) (citing *Salazar v. Atlantic Sun*, 881 F.3d 73, 79–80 (3d Cir. 1989); *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997)).

### III. DISCUSSION

The fundamental issue here is whether the Ship Mortgage Act, as Plaintiff asserts, provides jurisdiction for the maritime attachment of a vessel over which Plaintiff has no mortgage on the basis of an *in personam* claim for breach of the Loan Agreement or for ship mortgages. As Defendant's property, the M/T RIVERSIDE, has been attached pursuant to Admiralty Rule B. Plaintiff bears the burden of establishing a right to the attachment. (Doc. 6); *Icon Amazing, L.L.C. v. Amazing Shipping, Ltd.*, 951 F. Supp. 2d 909, 915 (S.D. Tex. 2013) (citing *Aqua Stoli Shipping, Ltd. V. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)).

5

### A. The Ship Mortgage Act

The Ship Mortgage Act, now known as the Commercial Instruments and Maritime Lien Act, 46 U.S.C. § 31301 *et seq.*, provides maritime jurisdiction over preferred mortgages. *United States v. TRIDENT CRUSADER*, 366 F.3d 391, 394 (5th Cir. 2004). Prior to the enactment of the Ship Mortgage Act, federal courts had no jurisdiction over a suit to foreclose on a mortgage on a ship. *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 817 (5th Cir. 1972) (internal citation omitted). The Act addressed the need for uniformity of procedure in ship mortgage foreclosure proceedings. *Id.* at 817–18. The Act also manifested a Congressional policy to confer jurisdiction on federal courts in controversies arising out of properly recorded ship mortgages in order to "afford[] substantial security to persons supplying essential financing" to the shipping industry. *Tropicana Shipping, S.A. v. Empresa Nacional ""Elcano" de la Marina Mercante*, 366 F.2d 729, 732 (5th Cir. 1966). To create public confidence in obligations issued on the faith of ship mortgages, Congress "[gave] a definite and assured character to such mortgages provided they met certain simple conditions." *TRIDENT CRUSADER*, 366 F.3d at 394 (citing *The Thomas Barlum*, 293 U.S. 21, 51 (1934)).

### B. Preferred Mortgages

Plaintiff relies on the Ship Mortgage Act, 46 U.S.C. § 31325(b)(2)(A), to provide the Court with jurisdiction in this case. Fundamentally, § 31325(b) necessitates default on a preferred mortgage.[5] 46 U.S.C. § 31325(b) ("On default of any term of the

---

[5] The Ship Mortgage Act defines a preferred mortgage as "a mortgage that is a preferred mortgage under section 31322 of this title" and, "in sections 31325 and 31326 of this title, a

preferred mortgage, the mortgagee may . . ."). A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel. 46 U.S.C. § 31325(a). The United States Court of Appeals for the Fifth Circuit has instructed that a "mortgage on a vessel" is not a "preferred mortgage" unless it complies with all conditions specified by the statute.[6] *United States v. TRIDENT CRUSADER*, 366 F.3d 391, 394, 396 (5th Cir. 2004); *Morse Dry Dock & Repair Co. v. The Northern Star*, 271 U.S. 552, 556 (1926)) ("The mortgage is made preferred only upon compliance with all the conditions specified. . .") ("We see no room for construction, and there is nothing for the courts to do but to bow their heads and obey."). Thus, for a mortgage to constitute a "preferred mortgage," it must meet all conditions required by statute. Here, it is unnecessary to determine whether Plaintiff's alleged ship mortgages comply with the statutory requirements so as to constitute "preferred mortgage[s]" because Plaintiff has no mortgage whatsoever on the attached vessel, the M/T RIVERSIDE. Plaintiff's alleged ship mortgages on

---

mortgage, hypothecation, or similar charge that is established as a security on a foreign vessel." 46 U.S.C. § 31301(6); *see also Provencher v. Binion & Sims, P.C.*, 401 F. Supp. 2d 740, 742 (S.D. Tex. 2005). Section 31322 defines a preferred mortgage as "a mortgage, whenever made" that meets certain requirements. *Provencher v. Binion & Sims, P.C.*, 401 F. Supp. 2d 740, 742 (S.D. Tex. 2005) (citing *The Thomas Barlum*, 293 U.S. 21, 38 (1934)).

[6] Under 46 U.S.C. § 31322, a "mortgage," "whenever made," is not a "preferred mortgage" unless it:
    (1) includes the whole of the vessel;
    (2) is filed in substantial compliance with section 31321 of this title [and];
    (3)(A) covers a documented vessel; or
    (B) covers a vessel for which an application for documentation is filed that is in substantial compliance with the requirements of chapter 121 of this title and the regulations prescribed under that chapter . . .
*United States v. TRIDENT CRUSADER*, 366 F.3d 391, 393 (5th Cir. 2004) (citing 46 U.S.C. § 31322).

7

vessels which are not involved in this case are irrelevant to the Court's inquiry.

### C. Application of 46 U.S.C. § 31325(b)(2)(A) to Plaintiff's *In Personam* Claims

Section 31325 of the Ship Mortgage Act states, in relevant part:

(a) A preferred mortgage is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.
(b) On default of any term of the preferred mortgage, the mortgagee may--
(1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, a vessel titled in a State, or a foreign vessel;
(2) enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in--
(A) a civil action in personam in admiralty against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness; and
(B) a civil action against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness;

(Doc. 21, p. 6). Section 31325(c) further provides that the "district courts have original jurisdiction of a civil action brought under subsection (b)(1) or (2) of this section."

The specific provision on which Plaintiff relies provides the following: "On default of any term of the *preferred mortgage*, the mortgagee may[]" "enforce a claim for the outstanding indebtedness *secured by the mortgaged vessel* in[]" "a civil action in personam in admiralty against the . . . guarantor . . ." 46 U.S.C. § 31325(b)(2)(A) (emphasis added). Here, Plaintiff has no mortgage on the M/T RIVERSIDE, much less a preferred mortgage. While Plaintiff asserts that the alleged debt is secured by ship mortgages on certain vessels, the M/T RIVERSIDE is not one of those vessels. As this case does not involve a preferred mortgage or mortgaged vessel, Plaintiff's claims plainly do not fall within the jurisdiction conferred to the Court by

8

46 U.S.C. § 31325(b)(2)(A).

> The legislative history regarding 46 U.S.C. § 31325(b) provides the following:
>
> Section 31325(b) provides that, on default of any term, the mortgagee may enforce the preferred mortgage lien in a civil action in rem, or in personam in admiralty against the mortgagor, comaker, or guarantor for the amount of the outstanding indebtedness secured by the vessel or any deficiency in paying off that indebtedness. This subsection makes a substantive change to law by allowing a nonadmiralty civil action to be brought against the mortgagor, comaker, or guarantor for the amount of the outstanding indebtedness secured by the vessel or any deficiency in paying off that indebtedness. . .

H.R. REP. 100-918, 44, 1988 U.S.C.C.A.N. 6104, 6137. While the legislative history indicates that a party may bring an action *in personam* against the guarantor, that action may be brought "for the amount of the outstanding indebtedness secured by the vessel or any deficiency in paying off that indebtedness."

First, it must be noted that the alleged indebtedness at issue here is not secured by the M/T RIVERSIDE. Second, this is not an action to secure any deficiency remaining after foreclosure of a vessel. The Fifth Circuit explained, when interpreting a previous version of the Ship Mortgage Act, that a mortgagee may bring suit *in personam* against the mortgagor in admiralty "for any deficiency in the amount of the indebtedness secured by the vessel." *See J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972) ("The Ship Mortgage Act . . . forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam*."); *see also Bollinger & Boyd Barge Serv., Inc. v. Motor Vessel, Captain Claude Bass*, 576 F.2d 595, 598 (5th Cir. 1978) ("[D]efendants are liable *in*

9

*personam* for that portion of the primary obligation still outstanding and not satisfied when the plaintiff purchased the vessel at the Marshal's sale and are responsible for that specific difference only.").

The Court finds that 46 U.S.C. §§ 31325(a)–(c) does not provide the Court with jurisdiction in this case. It would be improper for the Court to exercise jurisdiction over Plaintiff's *in personam* claim against Umur, the alleged guarantor and alter ego owner of the M/T RIVERSIDE, pursuant to the Ship Mortgage Act, when Plaintiff has no preferred mortgage on the M/T RIVERSIDE and the M/T RIVERSIDE does not secure the debt at issue. While it may be appropriate for Plaintiff to pursue a cause of action under 46 U.S.C. § 31325(b) following default on one of its alleged ship mortgages, should the ship mortgage constitute a preferred mortgage under the statute, those ship mortgages are not before the Court in this case.

The Court's holding is supported by the purpose of the Ship Mortgage Act: to address the need for uniformity of procedure in ship mortgage foreclosure proceedings. J. *Ray McDermott & Co.*, 457 F.2d at 817. This is not a ship mortgage foreclosure proceeding. Simply put, the Ship Mortgage Act was intended to address specific ship mortgages—no ship mortgage exists in favor of Plaintiff on the M/T RIVERSIDE. As a result, Plaintiff has not established its right to attachment of the M/T RIVERSIDE. Accordingly, the Court will grant Defendant's Motion To Vacate The Rule B Attachment And To Dismiss The Verified Complaint (Doc. 18).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Glory Riverside Navigation, Ltd.'s **Motion To Vacate The Rule B Attachment And To Dismiss The Verified Complaint (Doc. 18)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Court's **Order For Writ Of Attachment Pursuant To Admiralty Rule B (Doc. 6)** be and is hereby **VACATED.**

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Verified Complaint, Prayer For Process And Relief By Maritime Attachment (Doc. 20) is **DISMISSED** on the basis that the Court lacks subject matter jurisdiction over this matter.

**IT IS FURTHER ORDERED** that Defendant's *Ex Parte* Motion For Expedited Hearing (Doc. 37), Motion To Strike (Doc. 38), And *Ex Parte* Motion For Expedited Hearing (Doc. 39) are **DENIED AS MOOT.**

Baton Rouge, Louisiana, this 22nd of December, 2020

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**